UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| IRA V. ALSTON, | : | |
| *Petitioner* | : | CASE NO. 3:07CV1656 (JCH) |
| | : | |
| V. | : | |
| | : | |
| JEFFREY MCGILL, ET AL., | : | SEPTEMBER 10, 2008 |
| *Respondents* | : | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO DISMISS

I.    NATURE OF THE CASE

The petitioner, Ira Alston, is a Connecticut state prisoner currently confined at the

Northern Correctional Institution in Somers, Connecticut.   The petitioner is presently

serving a total effective sentence of thirty-five (35) years incarceration stemming from his

2002 conviction for manslaughter in the first degree with a firearm and carrying a pistol

without a permit.[1]   The petitioner has filed a *pro se*[2] petition for a writ of habeas corpus

challenging his state conviction, pursuant to 28 U.S.C. § 2254, wherein petitioner asserts

fourteen separate grounds[3], with a myriad of sub-claims, on which he claims he is being

held in violation of the Constitution, laws or treaties of the United States.  See Petitioner's

Application For A Writ Of Habeas Corpus Pursuant to 28 U.S.C. § 2254 By A Person In

---

[1]  Petitioner's sentence has been affirmed by the Sentence Review Division of the Connecticut Superior Court, Judicial District of New Haven.  In affirming petitioner's sentence, the three judge panel (Miano, J., Holden, J. and Iannotti, J.) determined that the sentence imposed by the trial court was neither inappropriate nor disproportionate.  State v. Alston, 2005 WL 2008702 (Conn. Super.); Appendix F.

[2]  On August 29, 2008, the Court (U.S.D.J. Hall) granted petitioner's motion to appoint counsel.  Attorney Robert J. Sullivan, Jr. was subsequently appointed to represent the petitioner in this matter.

[3]  Petitioner's fifteenth ground, as set forth in an August 13, 2008 motion to amend his petition, is a claim that the need to exhaust his claims at the state level should be excused by this Court because his case has been pending without resolution at the state level.

State Custody (hereinafter "Petitioner's Application") doc. # 2 at ¶ 19.

The respondents submit this memorandum in support of their Motion to Dismiss the petitioner's petition because none of the claims for relief raised in the petition have been fairly and fully presented to the highest Connecticut state court, as discussed *infra*.  As a result, none of petitioner's claims has been exhausted as required by 28 U.S.C. § 2254 (b)(1)(A).  In fact, **the petitioner is presently pursuing his claims** in the Connecticut Superior Court, Judicial District of Tolland at Rockville, in a case bearing docket number CV07-4001668-S.[4]

Despite the petitioner's assertion to the contrary, there has not been an inordinate delay in petitioner's post-judgment state proceedings that would excuse the exhaustion requirement.  As discussed *infra*, any delay in the petitioner's state habeas proceeding has been occasioned not by the state's actions, but rather by the actions of the petitioner or his privately retained counsel.  See generally Transcript of state habeas proceedings on August 13, 2008 in doc. no. CV07-4001668-S (hereinafter "HT 8/13/08"), Appendix J.

Because none of the petitioner's claims has been exhausted, and further, as the petitioner's properly filed state application for collateral review tolled the one year limitation period for filing a federal petition without a day having run, the petition should be dismissed in its entirety at this time, without prejudice to re-filing after petitioner has exhausted his state remedies.  The petitioner will then have a full year after the conclusion of his state habeas case to return to this Court if he so desires.

---

[4] Petitioner's case bearing docket number CV07-4001668-S represents a consolidation of that case and an earlier filing by the petitioner bearing docket number CV05-4000303-S.

2

## A.      Factual Background

On direct appeal, the Connecticut Supreme Court opinion stated that the petitioner's

jury reasonably could have found the following facts:

> On December 8, 1999, the [petitioner] was standing in the hallway of his apartment complex on the corner of Sherman Avenue and Elm Street in New Haven when Bobby Bloodworth, a fellow high school student, stopped by to visit Sohanna Early, a friend who lived in the complex. When Bloodworth emerged from Early's apartment, he saw the [petitioner] in the courtyard and talked to him briefly before leaving. As Bloodworth walked away from the courtyard, he saw two men approach on foot and a red car pull up to the curb. Anthony Tolliver, the victim, exited the car and jumped onto the short brick wall bordering the courtyard. The victim previously had purchased drugs from various dealers in the building, including the [petitioner]. After hearing the victim jump down off the wall and footsteps coming up behind him, Bloodworth turned around and saw the [petitioner] fire two shots, one of which struck the victim in the chest. Bloodworth immediately fled the scene. The victim, meanwhile, died on the pavement.
>
> The next day, Detective John Velleca of the New Haven police department was called to Hillhouse High School because students were discussing the shooting. On the basis of his investigation there, Velleca attempted to find the [petitioner] and Bloodworth for questioning.  Velleca first located the [petitioner], who was in custody on unrelated charges. After being advised of his *Miranda* rights, the [petitioner] signed a waiver of rights form and agreed to talk to the police. The [petitioner] proceeded to give statements to the police that, at trial, he subsequently admitted were lies. The [petitioner] told the police that he was not in the vicinity of the shooting on the night in question, but instead he was with a friend named Iona. He denied being involved in any drug dealing, and he claimed that he had never seen the victim before. He also described his clothing on the night of the shooting as consisting of a grey sweatsuit and black boots. All of these statements conflicted with the [petitioner's] subsequent trial testimony. At no point during the interview did the [petitioner] implicate Bloodworth as the shooter.
>
> The police department investigated the [petitioner's] alibi and found that it could not be corroborated. The police then confronted the [petitioner] with this information. At that point, according to Velleca's testimony, the

[petitioner] terminated the interview.[FN3]   Thereafter, he was released.

Velleca subsequently located Bloodworth and brought him to the police station for questioning. Bloodworth was frightened and crying, and immediately asked to be enrolled in a witness protection program. He thereafter gave a tape-recorded statement about the shooting and identified the [petitioner] as the shooter from a photoboard. Several days later, on December 13, 1999, the [petitioner] was arrested in connection with the shooting.

At trial, Bloodworth, an admitted drug dealer, testified against the [petitioner]. He indicated that, shortly after the shooting, the [petitioner] paged him and asked him whether he had told anyone about the incident. Early similarly testified at trial about the events surrounding the shooting. Although she did not implicate the [petitioner] as the shooter, since she had not witnessed the homicide, she testified that the [petitioner's] reaction to what had transpired was, "Shit happens."

* * * * * * * * * * * * * *

[FN3]  The [petitioner's] testimony at trial conflicted with Velleca's recollection of the interview on this crucial point. According to the [petitioner], he never was confronted with information about his alibi and he never terminated the interview, as Velleca had suggested. To the contrary, the [petitioner] claims that the police simply did not ask him any further questions. The following is an excerpt from the state's cross-examination of the [petitioner] with respect to this issue:

"[State's Attorney]: And, in fact, Mr. Alston, when police officers went to check on your alibi or your claims as to where you had been, and at one time you had been there, they came back and told you that that was not accurate, didn't they?

"[The Defendant]: Well, actually no, they didn't tell me that. They, when they came back they just brought me downstairs.

"[State's Attorney]: They never indicated to you that they checked out your story and that it proved false?

"[The Defendant]: No, they ain't never tell me that.

"[State's Attorney]: Never said that to you?

"[The Defendant]: No, they didn't."

4

Additionally, several other acquaintances of the [petitioner] testified that they had seen him with a weapon in the days leading up to the shooting. Tyrone Figgs testified that he had seen the [petitioner] with a .38 special revolver three days before the shooting. This was supported by the testimony of another witness, Angel Rich, who saw the [petitioner] carrying a gun one week before the shooting. Although Rich was not sufficiently familiar with guns to describe the specific caliber of the weapon, her physical description of the gun was consistent with Figgs' testimony. Their testimony also was consistent with the state's firearms expert who testified that the bullet that struck and killed the victim likely was fired by either a .357 magnum revolver or a .38 special revolver, both of which have a similar silver appearance.

The [petitioner] thereafter testified that the story he had given to police when he was first taken into custody on December 9, 1999, was entirely false. His testimony at trial implicated Bloodworth as the shooter. Specifically, the [petitioner] testified that Bloodworth was in the business of selling drugs along with an acquaintance by the name of Drew, and that, on the day of the shooting, he was playing the role of  armed lookout when the victim approached and jumped onto the wall. The [petitioner] admitted that he did not see Bloodworth actually shoot the victim, but he saw Bloodworth pull out a gun and raise it immediately before the [petitioner] heard shots fired. The [petitioner] further testified that he was merely an innocent bystander trying to leave the scene in order to get dinner when the homicide occurred. Thereafter, the jury convicted the [petitioner] of manslaughter in the first degree with a firearm and carrying a pistol without a permit, and the trial court sentenced him to thirty-five years imprisonment on the first count and a concurrent three year term of imprisonment for the second, for a total effective sentence of thirty-five years imprisonment.

State v. Alston, 272 Conn. 432, 435-38, 862 A.2d 817 (2005) (footnote in original); Appendix A.

### B.   Procedural Background

The procedural history of this case is compiled from documents, copied and forwarded as appendices hereto as follows:

Appendix A   Connecticut Supreme Court Decision, State v. Alston, 272 Conn. 432, 862 A.2d 817 (2005); affirming petitioner's judgment of conviction;

Appendix B   Record on Direct Appeal;

Appendix C   Petitioner's Brief with Appendix on Direct Appeal;

Appendix D    State's Brief with Appendix on Direct Appeal;

Appendix E    Petitioner's Reply Brief on Direct Appeal;

Appendix F    Memorandum of Decision of the Sentence Review Division, State v.Alston, Doc. No. CR99-486773, Connecticut Superior Court, Judicial District of New Haven, April 26, 2005; reported at 2005 WL 2008702 (Conn. Super.);

Appendix G    State of Connecticut Judicial Branch Case Detail for Alston v. Warden, State Prison, Doc. No. CV-05-4000303-S, Superior Court, Judicial District of Tolland at Rockville (state habeas case);

Appendix H    State of Connecticut Judicial Branch Case Detail for Alston v. Warden, State Prison, Doc. No. CV-07-4001668-S, Superior Court, Judicial District of Tolland at Rockville (state habeas case, which was consolidated with petitioner's habeas case bearing Doc. No.  CV-05-4000303-S on 7-11-07; the consolidated case is presently pending under this docket number);

Appendix I     Petitioner's Second Amended Petition for Writ of Habeas Corpus, dated June 12, 2008 in Alston v. Warden, State Prison, Doc. No. CV-07-4001668-S;

Appendix J    Transcript of August 13, 2008 proceedings in the matter Alston v. Warden, State Prison, Doc. No. CV-07-4001668-S (DosSantos, J., presiding) regarding petitioner's desire to have his private attorney withdraw and petitioner's stated desire to obtain alternate counsel or proceed *pro se* (24 pages).

### 1.    Petitioner's criminal trial

The petitioner was the defendant in a criminal case in the Superior Court, Judicial District of New Haven, captioned State v. Ira Alston, bearing docket number CR99-486773. Petitioner was charged with Murder in violation of Connecticut General Statutes Section 53a-54a, and Carrying a Pistol Without a Permit in violation of Connecticut General Statutes § 29-35(a), in connection with the shooting death of Anthony Tolliver on December 8, 1999 in the city of New Haven.

Petitioner elected a trial by jury and was represented at trial by Attorney Richard P. Silverstein.  The petitioner testified on his own behalf at the jury trial which was presided

over by the Honorable Judge Joseph A. Licari, Jr.   At the conclusion of his trial, the jury

acquitted the petitioner of the murder charge, but found him guilty of the lesser-included

offense of Manslaughter in the First Degree With a Firearm, a violation of Connecticut

General Statutes Section 53a-55a, and guilty as well on the carrying a pistol without a

permit charge.  See Record on Direct Appeal at 11, 12-12a.

Thereafter, on November 1, 2002, the trial court sentenced the petitioner to a total

effective sentence of thirty-five (35) years incarceration on the manslaughter conviction,

with three (3) years, to run concurrent, on the pistol charge.  Id.

### 2.    The petitioner's direct appeal

The petitioner pursued a direct appeal of his conviction to the Connecticut Supreme

Court.  On appeal, the petitioner was represented by Attorney Felix Esposito, and later by

Attorney Damon R. Kirschbaum.

On direct appeal, the petitioner presented his five issues as follows:

(I)     The [petitioner's] constitutional right to remain silent was violated through a
        series of repeated *Doyle*[5]  violations, which violations clearly deprived the
        [petitioner] of a fair trial;

(II)    Under the clear authority of our [Connecticut] Supreme and Appellate Courts,
        the trial court's charge concerning the permissible use and interpretation of
        the [petitioner's] trial testimony improperly reduced the State's burden of
        proving the [petitioner] guilty beyond a reasonable doubt, and impermissibly
        burdened the [petitioner's] right to testify;

(III)   The trial court's instructions to the jury improperly reduced the State's burden
        of proof on three separate occasions;

(IV)    The trial court improperly failed to inquire into serious allegations of juror
        misconduct, in direct contravention of the well-established precedent of [the
        Connecticut Supreme Court]; and

---

[5]  Doyle v. Ohio, 426 U.S. 610, 96 S.Ct. 2240, 49 L.Ed.2d 91 (1976).

(V)     The trial court failed to follow the mandated statutory procedure for replacing an excused regular juror with an alternate juror, in violation of [Connecticut] General Statutes § 54-82h.

Petitioner's Brief on Direct Appeal at 1, Appendix C.

The above five claims represent the only claims which the petitioner has ever presented to the Connecticut Supreme Court.

The Connecticut Supreme Court affirmed the petitioner's conviction in an opinion released on January 11, 2005. State v. Alston, 272 Conn. at 457, Appendix A.  The petitioner indicates his petition for certiorari in the United States Supreme Court was rejected on April 22, 2005.  See Petitioner's Application at ¶ 16.

### 3.     The petitioner's state collateral proceedings

In 2002, shortly after his November 1, 2002 sentencing, the petitioner initiated his first state habeas corpus proceeding in the Connecticut Superior Court, Judicial District of Tolland at Rockville.  That case, bearing Doc. No. CV-02-0003773-S, was voluntarily withdrawn by the petitioner, upon the advice of his court appointed counsel, Sean Crowshaw, because his direct appeal was then pending before the Connecticut Supreme Court.  See petitioner's representation to the court, HT 8/13/08 at 10-11, Appendix J.

On January 24, 2005 [6], the petitioner filed his second *pro se* state habeas corpus action, which was assigned Doc. No.  CV-05-4000303-S, in the Judicial District of Tolland at Rockville.  See Case Detail, Appendix G.  Subsequently, Attorney Joseph Visone was

---

[6]  Because the petitioner filed his state habeas within the ninety (90) day window for seeking certiorari in the United States Supreme Court following the release of the Connecticut Supreme Court's decision on January 11, 2005, the one year statute of limitations for federal filing provided by 28 U.S.C. § 2244(d)(1) was tolled without any of the limitations period having lapsed.

appointed as a special public defender to represent the petitioner and an amended petition was filed on petitioner's behalf.  Id.

On February 27, 2007, the petitioner filed his third *pro se* state habeas petition in the Judicial District of Tolland at Rockville, this time alleging ineffective assistance of counsel at his sentence review proceeding.  See Case Detail, Appendix H.  Attorney Visone was, likewise, appointed to represent the petitioner in this third state habeas action, bearing Doc. No. CV-07-4001668-S.

Petitioner subsequently dismissed his court appointed attorney, Visone, and hired private counsel, Attorney Frank Cannatelli, to represent him.  In July of 2007, the two pending state habeas cases were consolidated under one docket number, CV-07-4001668-S.  Id.  Petitioner sought, and was granted, permission to amend his petition.  An amended petition for writ of habeas corpus was filed on February 11, 2008.  Id.  In June of 2008, the petitioner again sought permission to amend his petition further.  Id.  Following the granting of permission to amend on July 17, 2008, a second amended petition was docketed on that date.  Id.

While the June 17, 2008 motion seeking permission to amend was pending before the court, the petitioner filed a separate motion, dated July 14, 2008, for permission to have his attorney withdraw his appearance.  Id.  As a result of both the newly amended petition and petitioner's stated desire that his counsel withdraw from the case, a trial, previously scheduled to be held on July 23, 2008, was ordered continued.  Id.

On August 13, 2008, the parties appeared in Rockville Superior Court before the Honorable Angelo L. Dos Santos to address the motion for permission for Attorney Cannatelli to withdraw from the case.  A copy of the transcript of those proceedings is

9

appended hereto as Appendix J.

At the hearing, Attorney Cannatelli detailed for the court the breakdown in his relationship with the petitioner. Id. at 3-5. Petitioner expressed his desire to dismiss Cannatelli over a difference of opinion in how to handle the case. Id. at 1-3. The petitioner indicated to the court that he wished to represent himself, yet also indicated that he would hire alternate counsel once he settled a fee dispute with Cannatelli. Id. at 5-7. The court discussed with petitioner the disadvantage of self representation, as well as the advantages that the Public Defender's Office could provide. Id. at 7-8. The court cautioned that there was a timetable to which petitioner's case would be held, even if he elected to proceed *pro se.* Id. at 8. Adele Patterson, head of the Public Defender's Habeas Corpus Unit, interjected that her office would readily accept another application from the petitioner. Id. at 9. She offered that petitioner had been represented by Special Public Defender Joseph Visone prior to the petitioner dismissing Visone in favor of hiring Cannatelli with family funding. Id. at 10. Patterson suggested that she would request Visone take back representation of the petitioner. Id. Petitioner balked at Visone being reassigned to the case, revealing that he had disagreements with Visone similar to those he was having with Cannatelli. Namely, petitioner and his attorneys have disagreed over the nature and quantity of claims to present. Id. at 11-13. While granting permission for Cannatelli to withdraw from the case, the court admonished petitioner to work with his attorney (whomever that might be) and trust his or her experience and judgment. Id. at 14-18. The trial court ultimately ordered petitioner to file his *pro se* appearance and ordered that petitioner file an amended petition, either *pro se* or through new counsel, within ninety days (by November 13, 2008) or the matter would proceed based upon the second

10

amended petition already on file.  Id. at 21-22.  A copy of the petitioner's pending Second Amended Petition for Writ of Habeas Corpus, dated June 12, 2008, is appended as Appendix I.

### 4.    The petitioner's federal petition for writ of habeas corpus

The petitioner filed the federal habeas corpus petition which is the subject of this motion on November 9, 2007.  Therein, petitioner presents fourteen grounds[7] upon which he claims he is being held in violation of the Constitution, laws or treaties of the United States.  See Petitioner's Application, doc. # 2 at ¶ 19.

Petitioner alleges, inter alia: (1) no probable cause for arrest; (2) no subject matter jurisdiction (defective information); (3) no subject matter jurisdiction (probable cause hearing not held in accord with procedures prescribed by law); (4) prosecutorial misconduct (prosecutor induced or solicited false testimony at probable cause hearing); (5) prosecutorial misconduct (prosecutor suppressed requested exculpatory and/or impeachment evidence during trial);  (6) prosecutorial misconduct (prosecutor induced or solicited false testimony at trial); (7) prosecutorial misconduct (prosecutor made improper statements during closing argument); (8) "physical fact rule" (evidence at hearing in probable cause presents a physical impossibility and/or improbability); (9) "physical fact rule" (evidence at trial presents a physical impossibility and/or improbability; (10)  judicial misconduct; (11) unconstitutional statute (Connecticut General Statutes Section 53a-55a manipulates the prosecution burden of proof); (12) ineffective assistance of pre-trial

---

[7] As noted in footnote 2, supra, petitioner filed an August 13, 2008 motion seeking to add a baseless fifteenth ground which maintains this Court should excuse the need to exhaust state court remedies due to the delay in addressing his claims at the state level.

counsel (Attorney Paul Carty); (13) ineffective assistance of trial counsel (Attorney Richard P. Silverstein); and (14) ineffective assistance of appellate counsel (Attorneys Felix Esposito and Damon A.R. Kirschbaum).  Id.

## II.   REASONS FOR DISMISSING THE PETITION

The respondents maintain that the petitioner's petition should be dismissed in its entirety at this time because the petition presents only claims which remain unexhausted in state court.

### A.   A Federal Habeas Corpus Petitioner Must Exhaust His State Remedies

In order for a federal court to consider the merits of a petition for a writ of habeas corpus challenging a judgment of conviction imposed by a state court, the habeas petitioner must satisfy two procedural requirements.  First, the petitioner must file the petition within the time limit set by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), Pub. L. No. 104-132, 110 Stat. 1214 (1996), which amended 28 U.S.C. § 2244(d)(1) to require that such petitions be filed within one year of the latest of four enumerated events.

Second, a petitioner seeking federal habeas review generally must exhaust all available state remedies prior to filing a habeas petition in federal court.  See 28 U.S.C. § 2254 (b)(1)(A); Galdamez v. Keane, 394 F.3d 68, 73 (2d Cir. 2005)(Exhaustion of all available state remedies is a prerequisite to habeas relief).  Exhaustion of state remedies means that a petitioner must present "the essential factual and legal premises of his federal constitutional claim to the highest state court capable of reviewing it." Cotto v. Herbert, 331 F.3d 217, 237 (2d Cir. 2003) (citation omitted).  In other words, "[t]he claim

presented to the state court ... must be the 'substantial equivalent' of the claim raised in the federal habeas petition." Jones v. Keane, 329 F.3d 290, 295 (2d Cir. 2003)(citations omitted). The claims may be presented either on direct review or through state post-conviction proceedings; "a prisoner does not have 'to ask the state for collateral relief, based on the same evidence and issues already decided by direct review.'" O'Sullivan v. Boerckel, 526 U.S. 838, 844 (1999)(quoting Brown v. Allen, 344 U.S. 443, 447 (1953)). However, review in the highest court must be sought, even if such review is discretionary and unlikely to be granted, because petitioners must "give the state courts one full opportunity to resolve any constitutional issues by invoking one *complete* round of the State's established appellate review process." O'Sullivan, 526 U.S. at 845 (emphasis added); see also Lloyd v. Walker, 771 F.Supp. 570, 573 (E.D.N.Y. 1991)(citing Wilson v. Harris, 595 F.2d 101, 102 (2d Cir. 1979))(petitioner must have utilized all available mechanisms to secure appellate review of the denial of [his] claim.)  Therefore, pursuant to the exhaustion requirement, a petitioner must provide the state courts with an opportunity to consider fully each of his habeas claims; that is, "state review ends when the state courts have finally resolved an application for state post conviction relief."  Roper v. Weaver, 127 S.Ct. 2022, 2023-24 (2007)(quoting Lawrence v. Florida, 127 S.Ct. 1079, 1083 (2007); see Jones v. Keane, 329 F.3d 290 at 294-95 ("Exhaustion requires a petitioner fairly to present the federal claim in state court.") (citing Strogov v. Attorney General of N.Y., 191 F.3d 188, 191 (2d Cir. 1999).

Furthermore, if a petitioner fails to seek state review within the time allotted by state law, or otherwise procedurally defaults his federal claims, those claims are also deemed procedurally defaulted for the purposes of federal habeas review, unless the petitioner can

13

either show cause for, and prejudice from, the default, or demonstrate that failure to consider the claim will result in a miscarriage of justice because he is actually innocent. See, e.g., Dretke v. Haley, 541 U.S. 386, 388 (2004).

Although the exhaustion requirement is often difficult for *pro se* petitioners to navigate, it is not intended to block access to the federal courts.  Rather, it is intended to, and does, pay due respect to the federalist principles of our Constitution, by giving state courts an opportunity to correct any constitutional errors that may have crept into the state criminal process.  See Wilwording v. Swenson, 404 U.S. 249, 250 (1971) (per curiam).

### B.    The Claims Presented Remain Unexhausted In State Court

As noted in Section I.B.2., *supra*, the petitioner raised five issues to the Connecticut Supreme Court on direct appeal of his conviction.  See State v. Alston, 272 Conn. at 435, Appendix A; see also Petitioner's Brief on Direct Appeal at 1, Appendix C.  These are the only issues which the petitioner has fully and fairly presented to the state's highest court to pass upon.  The petitioner does not raise these five claims in his present petition.

As previously explained, the petitioner sets forth in his petition fourteen separate grounds upon which he claims he is being held in violation of the Constitution, laws or treaties of the United States.  See Petitioner's Application, doc. # 2 at ¶ 19; see also Section I.B.4., *supra*.  Ordinarily, a *pro se* application as voluminous as the petitioner's pending one would lend itself to a finding that at least some of the petitioner's claims have been exhausted at the state level,  thus giving rise to a "mixed petition" containing both exhausted and unexhausted claims.  However, even broadly construing the petitioner's filing, as this court must, none of the claims presented can be interpreted as having been raised by the petitioner on direct appeal.

14

To the contrary, any indication that petitioner's claims in this federal habeas action *might* resemble claims exhausted in state court on direct appeal is directly contravened by petitioner's express statement in Claim 14 (ineffective assistance of appellate counsel) that petitioner believes that his appellate attorneys were ineffective precisely because they failed to brief or orally argue any of the claims which he sets forth as claims one through eleven.  Petitioner thus makes it abundantly clear that he is contemplating claims other than those which were pursued on his behalf on direct appeal.

The remaining claims, ineffective assistance of pre-trial counsel, ineffective assistance of trial counsel, and ineffective assistance of appellate counsel could not be raised on direct appeal under Connecticut law.  See State v. Leecan, 198 Conn. 517, 541-42, 504 A.2d 480 (1986).  Indeed, these are each included in petitioner's **presently pending** state habeas corpus proceeding bearing docket number CV07-4001668-S in the Superior Court, Judicial District of Tolland at Rockville.  See Case Detail, Appendix H.  see also Second Amended Petition for Writ of Habeas Corpus dated June 12, 2008, Appendix I.

Given that the petitioner has presented a petition which contains only claims which the petitioner has failed to exhaust first in state court, the "stay and abeyance" procedure endorsed by the Supreme Court for "mixed petitions" (whereby exhausted claims are stayed in federal court while the petitioner pursues exhaustion of others in state court) has no application to the particular facts of petitioner's case. See Rhines v. Weber, 125 S.Ct. 1528, 1535 (2005); see also Zarvela v. Artuz, 254 F.3d 374, 381 (2d Cir. 2001).

Because petitioner has not exhausted any of the claims raised in this petition and

15

is currently doing so in Connecticut state court, the proper procedure for this Court is to dismiss the petition without prejudice to it being refiled after the petitioner has exhausted his state court remedies. See e.g., Harris v. N.Y.S. Division of Parole, No. 06-CV-5893 (JFB), 2007 WL 1988823 at *3 (E.D.N.Y. July 5, 2007)(dismissing without prejudice to refiling a petition containing only unexhausted claims which petitioner was simultaneously pursuing in New York state court); Carpenter v. Reynolds, 212 F.Supp.2d 94, 98 (E.D.N.Y. 2002)(holding that, where a habeas petition sets forth only unexhausted claims, the district court has no basis to retain jurisdiction while the petitioner pursues exhaustion in the state courts); Ramos v. Superintendent of Clinton Corr. Facility, No. 01 Civ. 8743 (LAP)(FM), 2002 WL 1226860, at *3 (S.D.N.Y. April 12, 2002)("As the Second Circuit recently has indicated, if [the] petition contained any exhausted claims, the appropriate course of action would be to dismiss the unexhausted claims, stay the remainder of the petition, and direct [petitioner] to notify the Court within a short period after he has completed the exhaustion of his state court remedies. Here, however, [the] petition contains no exhausted claims. Accordingly, this Court has no basis to retain jurisdiction while [petitioner] pursues exhaustion."); Channer v. Brooks, No. 399 Civ. 2564 (CFD), 2001 WL 1094964 at #4 n.3 (D.Conn. Sept. 10, 2001)(dismissing habeas petition for failure to exhaust any claim in the petition).

      **C.**    **An Exception To The Exhaustion Requirement Is Not Appropriate Under The Facts Of Petitioner's Case, Where Any Delay In The Disposition Of Petitioner's State Habeas Case Has Been Caused By The Petitioner's Own Actions, Or Those Of His Privately Retained Attorney**

The petitioner alleges that he should not be required to exhaust his state court remedies because the state habeas court has "unnecessarily delayed disposition" of his

attempts at exhaustion in state court.  However, examination of petitioner's state proceedings reveals that such an excusal of the exhaustion requirement is inappropriate under petitioner's circumstances.  The Supreme Court has cautioned that an exception to the exhaustion requirement is appropriate only where there is no opportunity to obtain redress in state court or where the state corrective procedure is so clearly deficient that any attempt to obtain relief is rendered futile.  See Duckworth v. Serrano, 454 U.S. 1, 3 102 S.Ct. 18, 70 L.Ed.2d 1 (1981).  "Inordinate delay in concluding its post-judgment criminal proceedings may preclude a state from relying on the exhaustion requirement to defeat Federal review."  Sapienza v. Vincent, 534 F.2d 1007, 1010 (2d Cir. 1976).  The Second Circuit has not defined the precise interval which constitutes an inordinate delay.  It has noted, however, that an inmate is not required "to wait six years . . . or even three or four years before enlisting federal aid. . . ."  Simmons v. Reynolds, 898 F.2d 865, 870 (2d Cir. 1990) (court appointed appellate attorney failed to perfect direct appeal over a five year period).  See, e.g., Sapienza v. Vincent, 534 F.2d 1007, 1010 (2d Cir. 1976) (almost seven-year delay in processing state habeas petition precluded state from relying on exhaustion requirement as basis to deny federal habeas petition); Simmons, 898 F.2d at 870 (six-year delay in appeal and inability to obtain replacement counsel held sufficient to excuse exhaustion); Brooks v. Jones, 875 F.2d 30, 31-32 (2d Cir. 1989) (eight-year delay during which appointed counsel failed to file appeal held sufficient to excuse exhaustion).

First and foremost, the time during which petitioner's two state habeas cases have been pending cannot objectively be deemed inordinate.  Petitioner's presently pending state habeas case represents a consolidation of two cases, the first of which was filed on January 24, 2005, the second on February 27, 2007.  The two cases were consolidated

17

in July of 2007 under docket number, CV-07-4001668-S.  See Case Details, Appendices G & H.  The consolidated matters were scheduled for a trial to be held on July 23, 2008. In June of 2008, petitioner's privately retained counsel sought permission to further amend the petitioner's petition.  Id.  Counsel subsequently requested a continuance of the scheduled trial date.  Were it not for the requested continuances by petitioner's private counsel, the matter would have already been concluded in the state habeas court.

As the transcript of proceedings in the state habeas court on August 13, 2008 demonstrates, any delay in the state habeas corpus proceedings has been occasioned by the petitioner himself, or by his privately retained counsel acting on his behalf.  See transcript appended hereto as Appendix J.  Petitioner cannot dismiss his court appointed attorney, hire private counsel, repeatedly amend his petition, request a continuance of a scheduled trial date, dismiss his private attorney, then be heard to complain that disposition of his state case is taking too long.  Under the circumstances, an exception to the exhaustion requirement is clearly not warranted.

III.    **CONCLUSION**

The petition contains <u>only</u> unexhausted claims which the petitioner is presently

pursuing in state court. Therefore, the petition should be dismissed in its entirety without

prejudice to it being refiled after the petitioner has exhausted his state court remedies.

Respectfully submitted
THE RESPONDENTS, WARDEN, ET AL


By:    _____
DAVID M. KUTZNER
Sr. Assistant State's Attorney
Civil Litigation Bureau
Office of the Chief State's Attorney
300 Corporate Place
Rocky Hill, Connecticut 06067
Tel. (860) 258-5887
Fax. (860) 258-5968
Federal Bar No. ct 08123

## CERTIFICATION

I hereby certify that a copy of the foregoing document was mailed, first class postage prepaid, to: Robert J. Sullivan, Jr., Esquire, 190 Main Street, Westport, Connecticut 06880, on this 10th day of September, 2008.

_____
DAVID M. KUTZNER
Sr. Assistant State's Attorney